AO 91 (Rev. 11/11) Criminal Complaint

| | |
|---|---|
| AUSA: Craig Weier | Telephone: (313) 269-4697 |
| Special Agent: Sean Callaghan | Telephone: (313) 720-9596 |

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

United States of America
v.

JASEN BARBOUR

Case No.
Case: 2:20-mj-30498
Judge: Unassigned,
Filed: 12-02-2020 At 05:35 PM
IN RE:SEALED MATTER(CMP)(MLW)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 10-12, 2017__ in the county of __Oakland and elsewhere__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | WIRE FRAUD |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
Complainant's signature

Sean Callaghan, Special Agent - FBI
Printed name and title

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: __December 2, 2020__

_____
Judge's signature

City and state: __Detroit, MI__

Anthony P. Patti, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT

I, Sean Callaghan, being duly sworn, states as follows:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have investigated a variety of federal criminal violations, including various financial crimes, for approximately 17 years. During the course of the investigation described below, I was assigned to the Detroit Metropolitan Identity Theft and Financial Crimes Task Force [DMIFT] with various agents and local police officers and detectives who were deputized as federal agents to become Task Force Officers [TFOs]. One such TFO was Brian Martin, a veteran detective of the Auburn Hills Police Department. TFO Martin and I investigated numerous fraud cases together through over four years together on the task force.

2. The information contained in this affidavit is based on my personal knowledge and observations during the course of this investigation, financial reports that I have reviewed, documents and information provided by witnesses interviewed during this investigation, and discussions with and review of memoranda and evidence prepared or obtained by TFO Martin. The witnesses who were interviewed by DMIFT officers and agents pursuant to this

investigation provided complete identification information which I maintain (none were anonymous sources). However, I am identifying them in this affidavit, which will become public, only by their initials to protect their identities. Because this affidavit is being submitted for the limited purpose of establishing probable cause, I didn't include every fact I know concerning this investigation, but only the facts that I believe are necessary to establish probable cause to believe that Jasen Barbour committed wire fraud in violation of Title 18 USC Section 1343.

3. According to information provided by witness SB, during his July 9, 2019 interview with TFO Martin, Jasen Barbour asked SB about investing in Barbour's company, Metro Custom Cables [MCC], in or around March 2017.  At that time, Barbour showed SB purchase order #95687, purportedly a contract for MCC to supply parts to Amtrak, told him that he did not have enough capital to manufacture the parts, and was looking for an investor to supply that capitol.  Barbour showed SB that the contract was worth $2,570,184.  SB agreed to loan $50,000 to MCC on March

26th, 2017. MCC agreed to pay back the loan on 09/01/17, and to pay interest of 22.5% on 10/02/17.

4. SB further reported that Barbour approached him in April, May, and June 2017 for three more loans for MCC. In April 2017, SB agreed to loan MCC $100,000 based on a purchase order Barbour showed him to supply parts to Adam Integrated Industries Inc. (PO#4960). In May 2017, Barbour sought and SB agreed to loan MCC an additional $27,500 for the Adam order, which was funded on May 5, 2017. In June 2017, Barbour sought a $70,000 loan from SB in order to fulfill another purchase order, purportedly from Amtrack (#99630), which SB funded on June 29th, 2017. MCC was to pay the balance of all these debts on November 1, 2017, with 22.5% interest. SB provided TFO Martin with copies of the contracts documenting all of his transactions with Barbour described above.

5. SB reported that he was not paid on time for any of the loans and eventually heard that the purchase orders he was shown were fake. SB enlisted the help of his attorney, who ultimately notified law enforcement of these transactions. Barbour eventually agreed

3

      to pay SB and an associate of SB's, whose initials are DL, the outstanding balance of $551,500 and issued a check from METRO CUSTOMS CABLES drawn on a Chase Bank account #135865357, check #122. The check was deposited into SB's account on January 19, 2018, but was promptly returned Non-Sufficient Funds and never paid. SB provided TFO Martin with a copy of this check.

6.     Witness DL told TFO Martin during an interview on July 10, 2019 that he was introduced to MCC and Barbour through SB, a business associate. DL agreed that the loans were sound investments and agreed to the same amounts at the same time as SB, outlined above. DL provided TFO Martin with his written contracts for the loans which mirrored SB's in amounts and terms. They documented loans of $50,000.00 on March 26, 2017 (based on the Amtrak PO#95687), $100,000.00 on April 10, 2017 (based on the Adam PO#4960), $27,500.00 on May 5, 2017 (based again on the Adam PO#4960), and $70,000.00 on June 29, 2017 (based on the Amtrak PO#99630), for a total of $247,500.00. According to DL, these loans were not paid back.

7. During this investigation, TFO Martin contacted Amtrak Railway Operations and requested information on the purchase orders used by Barbour as evidence that his company, MCC, entered into contracts with Amtrak for parts. TFO Martin was directed to Vito Corso, Senior Special Agent/OIG Investigations for Amtrak. TFO Martin provided Corso with the information from the two purchase orders, purportedly from Amtrak, presented to multiple victims, including SB and DT. After researching Amtrak's business records, Corso advised that the purchase orders do not match any purchase orders held, promised, or paid by Amtrak Rail. It was Mr. Corso's opinion that the purchase orders were fake.

8. TFO Martin also contacted Colin McMastor, owner of Adam Intergrated Industries, Inc., and requested information on purchasing and ordering of parts. McMaster was provided with the information from the purchase order presented to multiple victims by Barbour and, after reviewing the business records of Adam Intergrated Industries, McMaster advised that the purchase order does not match any purchase orders held,

promised, or paid by Adam Integrated Industries Inc. and was fake.

9. All loans made by the above witnesses to Barbour/MCC were funded either by check or by direct wire, all of which caused signals to be sent in interstate commerce to fund the loans. For example, with respect to the April 10, 2017 $100,000 loan from DL to MCC, according to my November 16, 2020 telephone interview with DL, DL's spouse initiated the $100,000 wire transfer funding this loan on April 12, 2017 at their Bank of America branch in Rochester Hills. At her request, Bank of America wired $100,000.00 from their account to the JP Morgan Chase account of MCC. I contacted Bank of America's Law Enforcement Assistance department and was advised that all Bank of America wires transfers required electronic signals sent to Bank of America computer servers in either Texas or Virginia.

10. Barbour was deposed on February 8, 2019, as part of a civil suit brought in the Macomb County Circuit Court in Mt. Clemens, Michigan. During the deposition, Barbour admitted to falsifying purchase orders, including those described above from Amtrak, in

order to obtain loans and show investors that MCC was in good financial shape. Barbour then used or intended to use those proceeds of these loans to pay off previous lenders rather than to perform the bogus contracts.

11. Based on the foregoing, there is probable cause to believe that Jasen Barbour committed the offense of wire fraud in violation of Title 18 USC Section 1343.

Sean Callaghan, Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my presence
and/or by reliable electronic means

Date: December 2, 2020

Anthony P. Patti
United States Magistrate Judge

7